## Case No. 3,569.
### DA PONTE v. LOUISIANA STATE LOT-TERY CO.

[1 La. Law J. 184.]

Circuit Court, D. Louisiana. June 8, 1876.

CORPORATIONS—ULTRA VIRES CONTRACTS—RIGHTS OF STOCKHOLDERS —ACQUIESCENCE — WHO ARE STOCKHOLDERS.

[1. One purchasing shares of stock standing on the corporate books in the name of a third person, who holds them as security for a debt due from the seller, and, without obtaining any transfer, certificate, or other evidence of title, immediately pledges the stock to such third person, who continues to holds it, is not in a position to maintain a suit to enjoin the corporation from carrying out an alleged illegal contract.]

[2. It was not unlawful for the original directors of the Louisiana Lottery Company, who were its incorporators, and at the time the owners of all its stock, to make a contract in its behalf granting to certain individuals the right to exercise for 24 out of 25 years (the term of the charter) all the lottery rights, privileges, and franchises belonging to the company, and retaining merely a right to share in the profits and superintend the drawings.]

[3. A contract made by a corporation cannot be attacked as unauthorized, by a stockholder whose stock was derived from persons who had long acquiesced in such contract, and received profits thereunder.]

Eustis & Lazarus, for complainant.
John A. Campbell, for defendant.

BILLINGS, District Judge, sitting in the place of WOODS, Circuit Judge, rendered the following decision:

This is a motion for an injunction founded on a bill and affidavits, and resisted by counter affidavits. The complainant [Henry Da Ponte] claims to have acquired sixty shares of the stock of the Louisiana State Lottery Company in March, 1876. The stock which he claims to have acquired, stands in the name of T. S. Serrell on the books of the corporation. The plaintiff's name is not on the books of the corporation, nor is the name of his father, Durant Da Ponte, who claims to have sold the stock to the son, in March, 1876, for his note for the sum of $4,663, payable in March, 1877, nor is there any separation of any sixty shares of stock. Serrell was a creditor of the father, and held as security for the payment of the father's debt, 400 shares of stock, all of which stood on the books in the name of Serrell. The son gives his father the note above described, and the son executes to Serrell an act of pledge, whereby the son pledges sixty shares, gives Serrell the power to sell the same in case a note for $4,565.80,· described above, is not paid, and authorizes Serrell to transfer the same upon the books of the company in case of foreclosure of the pledge. Indorsed upon this act of pledge thus executed by the complainant, is the following: "The undersigned, T. S. Serrell, hereby accepts said pledge and acknowledges to have received said property pledged by said pledgor. T. S. Serrell."

It is to be observed that the son has no certificate of shares, no transfer upon the books of any shares, and no power to transfer given in blank or otherwise, as is customary in case of pledge. The only proper title is from himself to Serrell, and the sixty shares in a parcel of four hundred shares not separated or separable therefrom. What sixty shares were sold no one has attempted to indicate, nor what stock was pledged, save only that both father and son have testified that there was a sale of sixty shares. Without criticising the conflict between the statements of the bill and the proofs, and without any imputation upon either the father or the son, I am unable to conclude that the complainant is competent to maintain the title he has set out. The plaintiff, to maintain this suit, must be a bona fide shareholder, and sue bona fide for the company. In case of corporations, any member may sue, but he must be a full and complete member for all purposes, and not simply a person having an inchoate right. Green, Ultra Vires, 588, 589. In this case the plaintiff nowhere appears on the books of the corporation. No transfer has been made to him on the books, nor has he any assignment of the certificate, —the certificate which must, according to the by-laws of the company, disclose that T. S. Serrell is the owner of sixty shares of stock (if there be any collection of such shares separate from that of the 400), and that it is only transferable upon the surrender and cancellation of the certificate, and which contains no mention of the complainant. Addison, in his work on Contracts (7th Ed., p. 998), says: "So, if he has never been a shareholder at all, and there never has been any privity between him and the company, but he has simply purchased shares in the name of another person, who has been accepted as a shareholder," he cannot be made a contributory. King's Case, 6 Ch. App. 196.

The solicitors for the complainant concede that there must be a transfer on the books to entitle a member to vote. I think it follows that, if he cannot vote, he cannot attend corporate meetings and deliberate on the corporation business. Ang. & A. Corp. §§ 101–113. Neither can the holder of shares, who has been admitted to register, escape the lien which the corporation may have for debts due to it. Ang. & A. In 2 Barb. 294, 298, a trustee without interest—a vendor who had sold but had not transferred—was convicted of a liability to pay. The principle is stated with great exactness, in 4 Eng. Law & Eq. 34, 14 Beav. 64. The court held that between the seller and buyer of shares there were relations of contract, and there might be a trustee or a cestui que trust; but, in the absence of any contract with the company, there were no relations between the company and the purchaser; that the company had no claim on him, and retained all of its claim on the registered owner. 36 Eng. Law & Eq. 126; Ang. & A. Corp. § 534.

The bill says that the complainant is an onwer of stock encumbered with a charge of three-quarters of its par value for money borrowed by him from the person who is named as the stockholder. The plaintiff has certainly nothing better than a contract to convey upon the payment of his note one year hence. He has no certificate, no deed of conveyance, no transfer on the books, no power to transfer, no evidence of title, and no shares set apart to him. I conclude he has no standing in court for the purpose of rectifying the affairs of this corporation.

Passing the question of the right of the plaintiff to complain, I come to that of which he complains. The gravamen of his bill is that the contract of 1868 is illegal, and therefore he asks to enjoin its further execution or the further conduct of the business of the corporation under it. The contract, on the first part, consists of the president, directors and corporators, and that without an exception and prior to the issuance of any stock. The parties by the act itself are made corporators and directors; their powers are, inter alia "to do any lawful act, such as any person or persons may do for defence. interest or safety." The board may exercise all the corporate powers granted. By the terms of the contract under this charter the contractors were empowered to exercise for twenty-four out of twenty-five years (the term of the charter) all the lottery rights, privileges and franchises. Nine persons agreed for this period to conduct and carry on this business and share the profits with the corporation. The payment of the prizes is secured and the company superintends the drawing. It will be observed there is no interdict upon the corporation to make such a contract. Neither the Civil Code of the state, nor the statutes relative to corporations, nor this particular statute, place any restraint upon the corporation to make any contract which an individual might make.

The object of a corporation is, by the union of persons, to promote a useful or profitable enterprise. Civ. Code, 428. Nearly every form of union is permitted by the Revised Statutes (sections 683, 677). The only motive for asking this special act of incorporation was to obtain a modification of the laws relative to lotteries. By the constitution of 1852 the legislature had been prohibited from authorizing lotteries at all. This prohibition was omitted in the constitution of 1868, but prohibitory laws still remained. These laws, by this act, were repealed, and a power was granted to seven persons, their heirs, executors and assigns, who were constituted and declared to be a corporation, and were endowed with the sole and exclusive privilege of authorizing and establishing lotteries or a series of lotteries, and selling and disposing of lottery tickets. etc. The terms of this grant are very frank. They may establish—they may authorize—a series of lotteries; that is, they may constitute, construct, arrange, conduct, accomplish; they may empower, allow or permit, sanction, license, confer a right to a lottery or series of lotteries. The Civil Code defines in article 433 the powers of corporations, and in that article there is no expression of jealousy with respect to corporate unions. It is acknowledged that their business must be performed by others, and that these others have their authority from the corporation, and that the corporation may exercise full discretion in determining their powers. Civ. Code, 438, 439. The agreement in this case was made by the president and directors with the full assent of all the corporators,—no dissenting voice. These articles of the Code enter into the constitution of all private corporations. State v. New Orleans Gaslight & Banking Co., 2 Rob. (La.) 529.

The principle upon which the court of chancery acts is not to interfere between members of companies for the purpose of enforcing duties arising out of matters which are properly the subjects of internal regulation. It will not interfere to control a majority, unless it sees that the majority has been or is doing, or is about to do, that which is illegal even for a majority to do. It follows from this that the court will not interfere in matters of internal management until all reasonable attempts have been made to take the sense of the general body on the matter in question, nor unless it is then called upon to interfere, either by a majority to control a factious minority, or by the minority to control a majority which declines to do that which it is legally bound to do. Lindl. Partn. 754, side page. The Civil Code establishes the majority principle by a distinct provision. Civ. Code, 444. When the contract was made there was not only a majority but entire unanimity in the corporation, and among the president and directors assenting to it. It was the act of every party concerned in the charter. Since 1868 it has been enforced and not infringed. The rule undoubtedly is that illegal acts, though sanctioned by the majorty, and even if approved by all except one, will not be approved, but will be set aside by courts. But here I think this contract not at all opposed to the purposes of the act of incorporation. and within the powers of the corporators, and approved of and participated in by the corporators, one and all, and therefore I find the contract valid and operative upon all the shareholders, for they all derive their shares from some one who, when clothed with ownership, assented to it.

It was urged that the corporation could not farm out its business, because it was vested with power to enforce the prohibitions of its charter by the recovery of penalties. But the corporation still acts. It is still quickened by self-interest to recover the penalties, to enforce the law, and all this

the same as if there had been no contract.

In the case of Wood v. Howard,[1] Mr. Justice Bradley passed upon the legality and validity of this contract. In that case the claim of Wood was rejected because he had assigned his interest by a deed of trust, but before coming to that conclusion the learned justice takes up the question of this contract and says: "The Louisiana charter does not indicate any special trust or confidence with corporators therein named. They are merely made directors of the corporation for two years. After that, directors are to be elected by the stockholders; and the stock is transferable like any other stock. The body of stockholders is, or at least may be, for aught anything in the charter, a floating body of persons,—consisting of the first subscribers to the stock and their successors and assigns. The stock is divided into 10,000 shares of $100 each. It is the corporation, not any special set of corporators, directors or stockholders, which sustains any particular relations to the state, and the state has provided the proper security for the faithful action of the corporation, by requiring it to furnish heavy bonds for the prompt payment of the dues to the state, to wit, the $40,000 per annum, payable quarterly in advance. A monopoly of the lottery business is given to the corporation, and a violation of that monopoly subjects the party to a penalty of $5,000 for each offence, payable, not to the state, but to the corporation. The only benefit the act professes to secure to the state is the advantage of a 'home institution,' so that the money paid for the sale of lottery tickets shall not go out of the state, and the annual tax of $40,000. For the rest, the directors may establish such and so many agencies as they see fit. There is nothing in the charter to prevent the company from farming out its agencies in such manner as it has done to the defendants, or in any other manner it may see fit. And hence, there is nothing therein to prevent the substantial benefit of the franchises from being acquired and held, and lawfully acquired and held, by the defendants, as they have acquired it by the contract, or by any other body of capitalists." I think his reasoning conclusive.

There is still another impediment which, it seems to me, stands in the way of complainant's bill. It is the acquiescence on the part of those under whom he claims to derive his title in this contract, and their continued appropriation of its fruits. It has been often held that a consenting shareholder cannot maintain a suit on the ground that the thing done by the corporation was unwarranted. 1 Daniell, Ch. Pr. 452, or 244, 245 (4th Ed.); 4 De Gex & J. 125. In such a case it is as if the plaintiff had granted a release. Now, in this case, for eight years

this contract has formed the basis of all of the transactions of this company. Every successive shareholder (including the plaintiff's vendor) has assented to it, and availed himself of it, and it commenced, originally, upon the consent of the whole of the corporate body. No stockholder can now repudiate it as not authorized and not warranted. Kerr, Fraud & M. 298–301. Let the interlocutory injunction be denied.

---

[1] [Nowhere reported; opinion not now accessible.]

